In re Mary Louise **SPEIGHTS**, Debtor.

**Bankruptcy No. 91–07068.**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

Aug. 13, 1991.

Charles M. Wynn, Marianna, Fla., for Financial Service of Fla., Inc.

Steven Huss, Tallahassee, Fla., for debtor.

David Rogers, Atlanta, Ga., for Trustee.

### ORDER ON OBJECTION
### TO CONFIRMATION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

When is a mobile home not mobile? This is the issue raised in this Chapter 13 case.

The debtor, Mary Louise Speights resides in a doublewide mobile home located on a lot which she owns in Jackson County, Florida. The lot and mobile home are encumbered by a lien in favor of Associates Financial Service of Florida, Inc. (Associates) given in 1989 to secure a single promissory note in the original principal amount of $33,000. She filed a petition for relief under Chapter 13 of the Bankruptcy Code on January 30, 1991, at which time the balance due to Associates under the note was $33,951.00.

The debtor has filed her First Amended Chapter 13 plan in which she seeks to bifurcate the claim of Associates into two parts, one part secured solely by the land and the other part secured by the mobile home as personalty. With respect to the payments on the real estate, the plan proposes to pay the value of the land which was established to be $8,236 at the original contract interest rate and over the contract period. The value of the mobile home, which is $14,000, would be paid at a modified interest rate of 11% during the 36 month term of the plan.

Associates has objected to the plan on the ground that the plan violates the provisions of 11 U.S.C. § 1322(b)(2) which provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
>   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence....

The position taken by the debtor in this case is that the claim of Associates is not secured only by a security interest in real property but that the mobile home is personal property and therefore the claim with respect to it can be modified under a plan. Associates on the other hand asserts that under Florida law, the mobile home has become affixed to the property and has become part of the realty.

The determination of whether the property is real or personal is governed by the applicable state law. *In re Plaster,* 101 B.R. 696 (Bankr.E.D.OK.1989).

The facts of this case establish that the debtor owns the real property on which the mobile home sits. The mobile home is a doublewide which has been placed on concrete blocks with the tires, axles, springs and towing tongue all removed. It has been on the property since 1983. It is tied down to the ground and has skirting around the base of it. A porch has been constructed connecting to the mobile home. The mobile home has been classified and taxed as real property pursuant to the provisions of Chapter 320.015, Florida Statutes relating to taxation of mobile homes which provides:

> (1) A mobile home as defined in § 320.-01(2) regardless of its actual use shall be subject only to a license tax unless classified and taxed as real property. A mobile home is to be considered real property only when the owner of the mobile home is also the owner of the land on which the mobile home is situated and said mobile home is permanently affixed thereto....

The characterization of a mobile home as real property has been considered in two Florida cases. In *Mikos v. Kings Gate Club, Inc.,* 426 So.2d 74 (FL.D.C.A.1983), the court determined that a mobile home became realty even though it came from the manufacturer on axle wheels in sections 12 feet wide when once delivered they were placed on cement pad, leveled and tied to the ground with straps tied to anchors and driven into the ground. The wheels, axle, springs and tires were removed and the towing tongues were cut off. The court determined that the evidence as recited showed that the homes were permanent-

ly affixed to real property and were therefore part of the realty.

Likewise in *General Electric Capital Corporation v. Sohn,* 566 So.2d 841 (FL. 1st D.C.A.1990) the record at the trial demonstrated that the mobile home was permanently affixed to the real property. In that case, the appellee Sohn was able to purchase the real property on which the mobile home sat through a tax deed and as such took the property free of the security interest of G.E.C.C. in the mobile home. Essential to that determination was a finding by the court that a mobile home became part of the realty.

This identical question has been considered by a number of other bankruptcy courts. *Matter of Colver,* 13 B.R. 521 (Bankr.D.NV.1981); *In re Owens,* 36 B.R. 661 (Bankr.M.D.TN.1984); *In re Plaster,* 101 B.R. 696 (Bankr.E.D.OK.1989); *In re Carter,* 116 B.R. 156 (Bankr.W.D.MO. 1990). Of the four bankruptcy cases which have considered this question, only in *Colver* did the court find for purposes of modification of the secured claim was a mobile home which was the debtor's primary residence personal property. In *Colver,* the debtor was not the owner of the real property but merely leased a space in a mobile home park. Therefore, the creditor's claim was not secured by a security interest in real property. The other three cases considered facts substantially similar to those in the instant case, and all concluded that the mobile home became part of the realty and the creditor's claim was thus protected by § 1322(b)(2).

The debtor's assertion that it would be physically possible for the home to be moved from the property is unpersuasive. It is clear that the property has been improved to include the laying of a concrete porch to create a permanent homesite. The means for transporting the home have been removed, and the debtor has claimed the mobile home as homestead and claimed the real property tax exemption for homestead on it. The physical possibility of removing the home from the property cannot be considered to be determinative. It is possible to move almost any house not built on a concrete slab foundation thus the possibility of removal does not transform such a dwelling into personal property.

We therefore find that the mobile home owned by the debtor is part of the realty and therefore the claim with respect to the mobile home cannot be modified under the Chapter 13 plan. Accordingly, confirmation of the debtor's First Amended Chapter 13 plan shall be denied.

The debtor has, however, filed an alternate plan which she has requested that the court consider should it determine that the claim of Associates cannot be modified under the plan. The alternate plan provides for a cure of the arrearage to Associates and the reinstatement of the Associates' obligation. Associates has accepted that plan and accordingly the debtors' alternate plan to debtors' First Amended Chapter 13 Plan shall be confirmed. A separate order confirming the alternate plan shall be entered in accordance with this order.

DONE AND ORDERED.