217 B.R. 375 (1998)
In re Sharon THOMPSON, Debtor.
GREEN TREE CREDIT CORPORATION, Creditor-Appellant,
v.
Sharon THOMPSON, Appellee.
BAP No. 97-50035, Bankruptcy No. 96-65120.
United States Bankruptcy Appellate Panel of the Second Circuit.
Argued November 21, 1997.
Decided February 6, 1998.
*376 W. Bodow, Syracuse, NY, for Sharon Thompson (Debtor).
H. Goldberg, Goldberg & Fabiano, LLP, Syracuse, NY, for Green Tree Credit Corp. (Green Tree).
Before CONRAD, NINFO, BUCKI, Bankruptcy Judges

OPINION
CONRAD, Bankruptcy Judge.
Green Tree appeals[1] from an order of Bankruptcy Judge Gerling that denied its motion for summary judgment which claimed Debtor could not modify the rights of Green Tree under § 1322(b)(2) of the Bankruptcy Code.[2] The bankruptcy court found that Debtor's mobile home is personalty and denied Green Tree's motion, holding that § 1322(b)(2) applies only to realty. We must decide whether the mobile home is realty or personalty, and, if personalty, whether § 1322(b)(2) bars modification of Green Tree's rights in Debtor's homestead. For the reasons set forth below, we hold that Debtor's mobile home is personal property, both by contract and by statute. Section 1322(b)(2) prohibits modification of liens secured only by real property. Our ruling is a recognition of the Law of Impenetrability which states that it is impossible for more than one body to occupy the same place at the same time. Rather, each body forces the other into at least a trifle different environment, to which it must exactly conform. The Universal Panacea, N.D. Sickels, 1911. T.S. Eliot made the same observation in different words: "Each thing is what it is, and not some other thing." The mobile home is personalty, not realty, and § 1322(b)(2) applies only to realty. Accordingly, we affirm.

FACTS
In January, 1996, Debtor signed a Manufactured Home Promissory Note, Security *377 Agreement and Disclosure Statement. Under this Agreement, Debtor financed $13,111.50 of the purchase price of a mobile home with Green Tree and agreed to make monthly payments of $151.09 for 180 months, beginning in March of 1996. Paragraph 9 of the Agreement states:
I agree that regardless of how my Manufactured Home is attached to the real property and regardless of how your security interest in my Manufactured Home is perfected and regardless of whether an affidavit of affixture (or other similar instrument identifying the property as a fixture) has been recorded, my Manufactured Home is and shall remain personal property and is not and shall not become a fixture or part of the real property unless you consent in writing and state law permits a contrary classification. I agree to pay any and all personal property taxes assessed against my Manufactured Home . . .
Green Tree filed a UCC-1 with respect to the mobile home in February, 1996 in the Oswego County Clerk's office.
In April, 1996, after making only one payment on the mobile home, Debtor defaulted on her obligations to Green Tree. Green Tree then filed a replevin complaint. In July, the state court issued an Order to Show Cause why Green Tree should not be entitled to a replevin judgment and an order of seizure of the mobile home. While we have no record of what took place at the state court show cause hearing, we do know that before Green Tree could take possession of the collateral, Debtor filed her Chapter 13 bankruptcy petition on October 31, 1996.
Debtor listed no real property on her schedules. Her personal property included the mobile home that she valued at $10,000.[3] Debtor claimed an exemption in the mobile home under § 5206(a) of the New York Civil Practice Law & Rules (CPLR), which states:
(a) Exemption of homestead. Property of one of the following types . . ., owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment . . . :
1. a lot of land with a dwelling thereon,
2. shares of stock in a cooperative apartment corporation
3. units of a condominium apartment, or
4. a mobile home.
CPLR § 5206 (McKinney's 1978 & Supp. 1997). The above statute is entitled "Real Property Exempt from the Application to the Satisfaction of Money Judgments." The fourth type of property, "a mobile home," was added to the statute in 1980.
It is Debtor's proposed Chapter 13 plan that brings us together. Debtor proposes to pay Green Tree a total of $12,051.91 over 39 months, based on a claim of $10,000 (the stated value of the mobile home) at 9% per annum. Green Tree's proof of claim shows that it is owed $14,756.88. Not only does Green Tree contend that the mobile home is worth more than Debtor claims, it also contends that in any event, Debtor may not "cram down"[4] its claim to the value of the collateral due to the prohibition set forth in § 1322(b)(2). This section provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) [emphasis added].
Whether Debtor's mobile home is "real property" within the meaning of § 1322(b)(2) was the issue brought before Judge Gerling by Green Tree's motion for summary judgment. Judge Gerling denied Green Tree's motion for summary judgment, which sought a declaration that § 1322(b)(2) applies to Debtor and that Green Tree's claim may not be modified in Debtor's chapter 13 plan of reorganization.

ARGUMENTS OF THE PARTIES
Green Tree argued below that Debtor's mobile home is real property as a matter of *378 law. It put much emphasis on the 1980 amendment to include mobile homes in New York's homestead exemption law, especially because the title refers to "real property" entitled to exemption. The amendment intended to differentiate between mobile homes used as a principal residence (real property) and mobile homes not occupied as such (personal property), Green Tree reasoned. It also argued that the reasoning behind the law  to treat those who occupy mobile homes as their principal residence the same as those who own the land under their principal residences  should apply in any situation. Finally, Green Tree points out that New York tax law treats mobile homes as real property. NY Real Prop. Tax Law Sec. 102(12)(g).
Debtor argued, and the bankruptcy court found, that while the intent of the 1980 amendments was to include mobile homes within the homestead exemption, there is no evidence of legislative intent to reclassify them as real property. There is no such statement of legislative intent submitted. Debtor also relied on the above-quoted portion of the contract to demonstrate Green Tree's intent to classify the mobile home as personal property and to restrict Debtor's ability to change that classification. Green Tree imposed that personal property classification, Debtor contended, and it ratified its choice when it initiated a personal property replevin action against Debtor rather than a real property foreclosure.

DISCUSSION
A lower court's decision to grant or deny summary judgment is reviewable by this Court under the de novo standard of review. See In Re Rossi, 86 B.R. 220 (9th Cir. BAP 1988); In Re Maxwell Newspapers, Inc., 981 F.2d 85, 89 (2nd Cir.1992). Summary judgment is appropriately granted only upon a showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All factual inferences should be drawn in favor of the non-moving party. Id. 477 U.S. at 255, 106 S.Ct. at 2513-14. Summary judgment was appropriately denied here.
The court below found that the legislature, in drafting the 1980 amendment, did not rely heavily on the caption of the statute. After all, shares of stock in a cooperative apartment corporation cannot conceptually be real property, yet are exempt under the same homestead statute. CPLR § 5206(a)(2). The amendment fulfilled its sole purpose of adding mobile homes to the types of principal residences whose owner may enjoy the benefits of a homestead exemption. Thus, we agree with the bankruptcy court that CPLR § 5206 was not designed to reclassify mobile homes as real property. We also agree with the finding that the mobile home in this instance is personal property because of the specific contract terms and because Debtor did indeed move her mobile home during the bankruptcy proceedings. Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) tells us that property interests are created and defined by state law. Judge Gerling's insightful analysis below found Debtor's home to be personal property according to New York law. We affirm.
What is more important to this Court, however, is the plain meaning and purpose of § 1322(b)(2), the section that brings us here. As noted above, this section prohibits debtors from modifying the rights of creditors who are secured "only by a security interest in real property that is the debtor's principal residence." The section describes a very specific subset of creditors whose rights cannot be modified. We must assume that Congress intended that all other creditors be subject to this section because of its specificity. The plain meaning of § 1322(b)(2) does not allow us to include creditors who are not named in the section.[5]
In further support of our above holding, we note, as Judge Gerling did, that § 522(d)(1) provides for an exemption for "real or personal property" that a debtor *379 uses as a residence, an explicit acknowledgment that residences can be personal property. On the other hand, no such language is included in § 1322(b)(2). We must assume that Congress, when drafting § 1322(b)(2), was aware of the age old debate over mobile homes and simply chose not to include the "or personal property" language from § 522 in § 1322(b)(2). Section 1322(b)(2) means what it says. Its intent is clear. Green Tree does not fit within the narrow subset of creditors protected by § 1322(b)(2).

CONCLUSION
For the reasons set forth above, we affirm the Order of the bankruptcy court in all respects.
NOTES
[1] This Bankruptcy Appellate Panel, with the consent of the parties, has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges within this circuit. 28 U.S.C. § 158(a), (b)(1). Because Green Tree did not timely opt to have the appeal heard by the District Court for the Northern District of New York, it is deemed to have consented. 2nd Cir. BAP L.R. 8001.1(a)(i).
[2] All code references in this opinion are to Title 11 of the United States Code, the Bankruptcy Code.
[3] The exact value of the mobile home is the subject of a dispute that is not before us today.
[4] "Cram down" is bankruptcy jargon that describes what a debtor can do to a creditor in a plan of reorganization. It reduces an undersecured creditor's secured claim to the value of its collateral.
[5] This is an expression of the maxim of statutory interpretation entitled expressio unis est exclusio alterius, which means that the mention of one thing is the exclusion of another.